943 F.2d 1435
 60 USLW 2271, 25 Collier Bankr.Cas.2d 986,
22 Bankr.Ct.Dec. 223,
Bankr. L. Rep. P 74,305,
14 Employee Benefits Cas. 2376
 In the Matter of Marshall James DYKE, Debtor.
William E. HEITKAMP, Trustee, Appellant,
v.
Marshall James DYKE, Appellee.
In the Matter of Amos Daniel FELTS, a/k/a Dan Felts, and
Laura Otila Felts, Debtors.
The FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for
United Bank of Texas, Appellant,
v.
Amos Daniel FELTS, a/k/a Dan Felts, and Laura Otila Felts, Appellees.
 Nos. 90-2421, 90-8491.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 15, 1991.
 
 Marilee A. Madan, Calvin, Dylewski, Gibbs, Maddox & Verner, Houston, Tex., for appellant Heitkamp.
 David James Askanase, Hughes, Watters & Askanase, Houston, Tex., for appellee Dyke.
 Richard N. Weinstein, Robert Michael Duffey, San Antonio, Tex., for amicus curiae: Employee Benefits Committee.
 Steven R. Smith, Haynes & Boone, Austin, Tex., Edward J. O'Meara, Ann S. Duross, Joan E. Smiley, Attys., FDIC, Washington, D.C., for appellant FDIC.
 Adrian M. Overstreet, Stephen W. Sather, Overstreet, Winn & Edwards, Austin, Tex., for appellees Felts.
 Appeals from the United States District Courts for the Southern and Western Districts of Texas.
 Before JOHNSON and WIENER, Circuit Judges.*
 JOHNSON, Circuit Judge:
 
 
 1
 In 1987, the Texas legislature enacted a statute--now codified in section 42.0021(a) of the Texas Property Code--which exempts retirement benefits from the claims of creditors. In these consolidated cases, this Court must determine whether the Employee Retirement Income Security Act of 1974 ("ERISA"), which one court has described as a "quicksand [that] is fast swallowing up everything that steps in it or near it,"[1] preempts section 42.0021(a) of the Texas Property Code. We conclude that, in this situation, the ERISA quicksand does not run so deep: ERISA does not preempt section 42.0021(a).
 
 I. FACTS AND PROCEDURAL HISTORY
 A. Heitkamp v. Dyke
 
 2
 Marshall James Dyke ("Dyke"), a physician, operates the Conroe Ear, Nose and Throat Clinic, P.A. Dyke is the sole shareholder of the professional association and the sole trustee of an ERISA-qualified pension plan in the professional association.[2] On October 1, 1987, Dyke filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. The bankruptcy court appointed William E. Heitkamp as the Chapter 7 trustee of Dyke's bankruptcy estate. During the bankruptcy proceedings, Dyke claimed a state exemption under Texas Property Code section 42.0021(a) of his interest in the pension plan. Trustee Heitkamp filed an objection to this claimed exemption. Both parties subsequently filed motions for summary judgment.
 
 
 3
 The bankruptcy court granted the trustee's motion for summary judgment, reasoning that ERISA preempts section 42.0021(a) of the Texas Property Code. In re Dyke, 99 B.R. 343, 349-50 (Bankr.S.D.Tex.1989). Dyke appealed, and the district court reversed the judgment of the bankruptcy court. 119 B.R. 536. The district court concluded (1) that ERISA does not preempt section 42.0021(a) of the Texas Property Code and (2) that the pension plan is exempt from the bankruptcy estate under section 42.0021(a).
 
 B. FDIC v. Felts
 
 4
 Amos Felts, an attorney, is a shareholder in the law firm of Robinson, Felts, Starnes, Angenend & Mashburn, P.C. He participated in a defined benefit pension plan and a defined contribution plan that the firm offered to its employees. On December 4, 1989, Amos Felts and his wife ("the Felts") filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. During the bankruptcy proceedings, the Felts claimed that their interests in the benefit pension plan and contribution plan were exempt from their bankruptcy estate under section 42.0021(a) of the Texas Property Code.[3] The Federal Deposit Insurance Corporation, as receiver for the United Bank of Texas,[4] filed an objection to this claimed exemption.
 
 
 5
 The bankruptcy court permitted the Felts to claim the exemption of their interests in the plans. The court reasoned that, while ERISA preempts section 42.0021(a) of the Texas Property Code, an antialienation provision in ERISA is "other federal law" which effectively removes a debtor's interest in an ERISA-qualified pension plan from the reach of creditors.[5] In re Felts, 114 B.R. 131, 133-34 (Bankr.W.D.Tex.1990). The FDIC appealed the ruling of the bankruptcy court, and the district court affirmed on other grounds. The district court ruled that ERISA does not preempt section 42.0021(a).
 
 II. BACKGROUND
 
 6
 The United States Bankruptcy Code provides that, upon the commencement of a bankruptcy case, all legal and equitable interests of a debtor in property become part of the bankruptcy estate. 11 U.S.C. § 541 (1988).[6] There are two broad exceptions to this rule. First, the Code states that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." Id. § 541(c)(2) ("the section 541(c)(2) exclusion"). This provision excludes certain property from the bankruptcy estate. Second, the Code authorizes a debtor to exempt certain property from the bankruptcy estate. Id. § 522 ("the section 522 exemptions"). Section 522(b)(1) of the Bankruptcy Code, for instance, entitles a debtor to exempt certain property specified in section 522(d) of the Code. Id. § 522(b)(1). Section 522(b)(2) permits each state to create a separate list of exemptions that a debtor can claim. Id. § 522(b)(2).[7]
 
 
 7
 The section 522 exemptions are much broader than the section 541(c)(2) exclusion. Accordingly, if a debtor enters bankruptcy, the debtor will seek to exempt as much property as possible from his bankruptcy estate. Under Texas law, however, a debtor must elect between the "federal" and the "state" exemption scheme. The federal exemption scheme allows the debtor to exempt property specified in section 522(d) of the Code, while the state exemption scheme allows the debtor to exempt property specified under state law or "other federal law" than section 522(d). In re Goff, 706 F.2d 574, 579 (5th Cir.1983) (emphasis in original).[8] The debtor cannot elect the most favorable exemptions in each scheme: he must weigh the advantages of each scheme and then choose one or the other. Id.
 
 
 8
 Most Texas debtors elect the state exemption scheme because Texas law affords a generous homestead exemption.[9] Prior to September 1987, however, the election of the state exemption scheme was unfavorable to participants in large retirement plans. At the time, the state exemption scheme did not permit the exemption of a debtor's interest in a retirement plan. A debtor who owned a substantial interest in a retirement plan was relegated to the federal exemption scheme, which authorized the exemption of such retirement plans.[10] Unfortunately, the election of the federal exemption scheme required that the debtor sacrifice the state homestead exemption.
 
 
 9
 To avoid this Catch-22, Texas debtors argued that the terms of ERISA provided an exemption they could elect in addition to the state exemption scheme. Section 206(d)(1) of ERISA states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1) (1982 & Supp. V 1987). This "antialienation" provision creates a bar to the assignment or garnishment of qualified plan benefits.[11] Debtors maintained that this antialienation provision was either (1) "other federal law"--which extends an exemption that supplements the state exemption scheme--or (2) "applicable nonbankruptcy law"--which triggers the section 541(c)(2) exclusion. The Fifth Circuit in In re Goff, 706 F.2d 574 (5th Cir.1983), rejected these arguments and ruled that creditors could reach funds in the Keogh or H.R. 10 retirement plans of debtors who elected the state exemption scheme in Texas bankruptcy proceedings.[12] The Court concluded that the ERISA antialienation provision is not "applicable nonbankruptcy law" and, in dicta, reasoned that the antialienation provision is not "other federal law." Id. at 582, 586-87.
 
 
 10
 In several subsequent cases, the Fifth Circuit extended its reasoning in In re Goff that debtors who elect the state exemption scheme are not entitled to exempt their interests in retirement plans. The Court ruled, for instance, that creditors could reach retirement funds in a municipal pension plan, even though the plan benefits were assignable to the municipal credit union. In re Reagan, 741 F.2d 95, 97-98 (5th Cir.1984). The Court ruled that creditors could reach a vested interest in an ERISA-qualified trust. In re Brooks, 844 F.2d 258, 264 (5th Cir.1988). The Court also ruled that creditors could seize interests in an annuity established under a group master contract. In re Johnson, 724 F.2d 1138, 1140-41 (5th Cir.1984).
 
 
 11
 In response to In re Goff and its progeny, the Texas legislature, effective September 1, 1987, amended the Texas Property Code to permit debtors to exempt ERISA-qualified pension plans under the state exemption scheme. The amendment was codified in section 42.0021(a) of the Texas Property Code, which after some minor changes in 1989 now provides:
 
 
 12
 (a) In addition to the exemption prescribed by Section 42.001, a person's right to the assets held in or to receive payments, whether vested or not, under any stock bonus, pension, profit-sharing, or similar plan, including a retirement plan for self-employed individuals, and under any annuity or similar contract purchased with assets distributed from that type of plan, and under any retirement annuity or account described by Section 403(b) of the Internal Revenue Code of 1986, and under any individual retirement account or any individual retirement annuity, including a simplified employee pension plan, is exempt from attachment, execution, and seizure for the satisfaction of debts unless the plan, contract, or account does not qualify under the applicable provisions of the Internal Revenue Code of 1986. A person's right to the assets held in or to receive payments, whether vested or not, under a government or church plan or contract is also exempt unless the plan or contract does not qualify under the definition of a government or church plan under the applicable provisions of the federal Employee Retirement Income Security Act of 1974. If this subsection is held invalid or preempted by federal law in whole or in part or in certain circumstances, the subsection remains in effect in all other respects to the maximum extent permitted by law.
 
 
 13
 Tex.Prop.Code Ann. § 42.0021(a) (Vernon Supp.1991). This provision allows debtors to exempt various retirement accounts from their bankruptcy estates, including stock bonus, pension and profit sharing plans and annuities.[13]
 
 
 14
 Since its enactment, however, section 42.0021(a) has sparked considerable controversy. Creditors, the obvious foes of section 42.0021(a), have complained that this provision unnecessarily restrains their ability to recoup their losses. They have challenged the validity of section 42.0021(a) in a number of recent bankruptcy proceedings. In particular, they have argued--with mixed results--that the Employee Retirement Income Security Act of 1974 preempts section 42.0021(a). See, e.g., In re Majul, 119 B.R. 118 (Bankr.W.D.Tex.1990) (ERISA preempts § 42.0021(a)); In re Deisher, No. 388-35575-HCA-7, 1990 WL 80913 (Bankr.N.D.Tex. Jan. 4, 1990) (ERISA preempts § 42.0021(a)); In re Felts, 114 B.R. 131, 133 (Bankr.W.D.Tex.1990) (ERISA preempts § 42.0021(a)), rev'd, No. A-90-CA-364 (W.D.Tex. July 30, 1990); In re Komet, 104 B.R. 799, 805 (Bankr.W.D.Tex.1989) (ERISA preempts § 42.0021(a)); In re Volpe, 100 B.R. 840, 855 (Bankr.W.D.Tex.1989) (ERISA does not preempt § 42.0021(a)), aff'd, 120 B.R. 843 (W.D.Tex.1990); In re Dyke, 99 B.R. 343, 350 (Bankr.S.D.Tex.1989) (ERISA preempts § 42.0021(a)), rev'd, 119 B.R. 536 (S.D.Tex.1990). Cf. In re Laxson, 102 B.R. 85, 89 (Bankr.N.D.Tex.1989) (ERISA does not preempt the clause in § 42.0021(a) which permits exemption of IRAs).[14]
 
 III. DISCUSSION
 
 15
 The parties in these consolidated appeals raise essentially three issues: (1) whether the antialienation provision of ERISA section 1056(d)(1) is "applicable nonbankruptcy law" under section 541(c)(2) of the Bankruptcy Code; (2) whether the antialienation provision of ERISA section 1056(d)(1) is "other Federal law" under section 522(b)(2)(A) of the Bankruptcy Code; and (3) whether ERISA preempts section 42.0021(a) of the Texas Property Code. Because these are legal issues, we review them under the de novo standard of review. In re Texas Research, Inc., 862 F.2d 1161, 1163 (5th Cir.1989); Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1307-08 (5th Cir.1985).A. The Section 541(c)(2) Exclusion--"Applicable Nonbankruptcy Law "
 
 
 16
 The Bankruptcy Code defines property of the bankruptcy estate as all legal or equitable interests of the debtor except property which is subject to "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2) (1988). If property qualifies for exclusion under section 541(c)(2), the property is not part of the bankruptcy estate and, accordingly, lies beyond the reach of creditors, regardless whether the debtor elects the federal or state exemption scheme. Id.
 
 
 17
 The debtors in these consolidated cases argue that the antialienation provision of ERISA section 1056(d)(1), which proscribes the assignment or alienation of pension plan benefits,[15] is "applicable nonbankruptcy law." This Court rejected a similar argument in In re Goff, 706 F.2d 574 (5th Cir.1983). In In re Goff, this Court reasoned that the term "applicable nonbankruptcy law" in Bankruptcy Code section 541(c)(2) refers to state spendthrift trust law and not to federal statutes such as ERISA. Id. at 577.[16] The Court determined that, although ERISA prohibits the alienation of pension plan benefits, it does not shelter pension funds from inclusion in the bankruptcy estate unless the pension plan qualifies under state law as a spendthrift trust. Id. at 587.[17] The Court ruled that the Keogh plans in In re Goff did not qualify as spendthrift trusts and, therefore, that the funds in the plans were properly included in the bankruptcy estate.
 
 
 18
 The decision in In re Goff limited the section 541(c)(2) exclusion to pension plans which qualify under state law as spendthrift trusts. To avoid the In re Goff limitation, the debtors in these consolidated cases raise several arguments. First, the debtors argue that this Court should overrule its decision in In re Goff. Second, the debtors argue that the United States Supreme Court in Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), has effectively overruled the decision of the Fifth Circuit in In re Goff. Third, the debtors argue that, even if In re Goff is a correct interpretation of section 541(c)(2), their retirement plans are spendthrift trusts under Texas law. None of these arguments is persuasive.
 
 
 19
 We recognize that the federal courts have not uniformly embraced our decision in In re Goff. Compare In re Daniel, 771 F.2d 1352, 1360 (9th Cir.1985) (agreeing with In re Goff), cert. denied, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); In re Lichstrahl, 750 F.2d 1488, 1490 (11th Cir.1985) (same); In re Graham, 726 F.2d 1268, 1273 (8th Cir.1984) (same) with In re Lucas, 924 F.2d 597, 601 (6th Cir.1991) (rejecting In re Goff ); In re Moore, 907 F.2d 1476, 1479 (4th Cir.1990) (same).[18] Nonetheless, we decline the debtors' invitation to overrule In re Goff. Even if we were convinced that In re Goff states an incorrect interpretation of section 541(c)(2), we still would have no authority to overrule an earlier decision of our Court. In this circuit, one panel may not overrule the decision--right or wrong--of a prior panel, absent en banc reconsideration or a superseding contrary decision of the Supreme Court. Pruitt v. Levi Strauss & Co., 932 F.2d 458, 465 (5th Cir.1991); Brown v. United States, 890 F.2d 1329, 1336 (5th Cir.1989).
 
 
 20
 The decision of the Supreme Court in Mackey v. Lanier Collection Agency & Serv., Inc. does not alter the precedential effect of In re Goff. In Mackey, the Supreme Court ruled that, while ERISA preempted a statute which specifically exempted funds in an employee benefit plan from garnishment, ERISA did not preempt a general garnishment statute to the extent that the statute applied to welfare benefit plans. The Court commented that the ERISA antialienation provision prevents creditors from reaching the funds in pension plans, but not welfare plans:
 
 
 21
 Where Congress intended in ERISA to preclude a particular method of state-law enforcement of judgments, or extend antialienation protection to a particular type of ERISA plan, it did so expressly in this statute. Specifically, ERISA § 206(d)(1) bars (with certain enumerated exceptions) the alienation or assignment of benefits provided for by ERISA pension benefit plans. 29 U.S.C. § 1056(d)(1). Congress did not enact any similar provision applicable to ERISA welfare benefit plans....
 
 
 22
 486 U.S. 825, 836, 108 S.Ct. 2182, 2188, 100 L.Ed.2d 836 (1988) (emphasis in original).
 
 
 23
 On its face, the decision in Mackey does not appear to disturb the decision of the Fifth Circuit in In re Goff. Mackey confirms the fact that a creditor cannot employ state garnishment law to alienate pension plan benefits. In re Goff confirms the fact that the ERISA antialienation provision does not preclude the inclusion of pension plan benefits in the bankruptcy estate. Each opinion serves a different purpose: the Supreme Court opinion resolves a conflict between a federal statute and a state statute, while the Fifth Circuit opinion resolves a conflict between two federal statutes--ERISA and the Bankruptcy Code.
 
 
 24
 The debtors argue, however, that certain language in Mackey "impliedly" overrules In re Goff. They emphasize that the Mackey Court recognized that ERISA section 1056(d)(1) exempts plan benefits from the reach of creditors. The debtors note that a principal function of spendthrift trusts is, like ERISA-qualified benefit plans, to protect a beneficiary's interest from the claims of creditors. Concluding that ERISA and state spendthrift law regulate the same functions, the debtors contend that ERISA preempts state spendthrift law and, as a result, prevents its application under section 541(c)(2) of the Bankruptcy Code. Under this analysis, the debtors reason that Congress must have intended that ERISA section 1056(d)(1) could constitute "applicable nonbankruptcy law," because otherwise Bankruptcy Code section 541(c)(2) would serve no purpose.
 
 
 25
 Certainly, as the debtors argue, this Court must construe a statute in such a manner as would give each provision of the statute full effect. "[I]nterpretations which render parts of a statute inoperative or superfluous are to be avoided." Duke v. University of Texas at El Paso, 663 F.2d 522, 526 (5th Cir. Dec.1981). This same canon of statutory construction, however, also supports the analysis of the Fifth Circuit in In re Goff. As we recognized in In re Goff, the federal exemption scheme in the Bankruptcy Code authorizes the exemption of funds in ERISA retirement plans. 706 F.2d at 585.[19] If Congress had intended in section 541(c)(2) to exclude ERISA plans from the bankruptcy estate, then Congress would not have authorized the federal exemption of such plans. Id. at 582. Thus, the Court in In re Goff attempted to avoid an interpretation of ERISA which would have rendered superfluous the federal exemption of retirement plans: the Court concluded that ERISA section 541(c)(2) does not exclude retirement plans from the bankruptcy estate unless they qualify under state law as a "spendthrift trust." Id. at 587.[20]
 
 
 26
 The debtors and this Court in In re Goff advance the same canon of statutory construction to reach opposite conclusions. The question is whether this Court should reject our prior analysis in favor of the analysis that the debtors advocate. We conclude that we should not reject our analysis in In re Goff. The language that the debtors cite from Mackey provides some measure of support for their analysis, but does not specifically condone the result that the debtors favor. In short, the Supreme Court in Mackey did not rule that ERISA could constitute "applicable nonbankruptcy law." In an attempt to persuade this Court to reject In re Goff, the debtors have stretched Mackey beyond the point that the Supreme Court intended it to go. Mackey is not clearly contrary to the decision of the Fifth Circuit in In re Goff and, consequently, the decision in In re Goff remains a valid interpretation of the section 541(c)(2) exclusion. See Ketchum v. Gulf Oil Corp., 798 F.2d 159, 162 (5th Cir.1986) ("The holding of a panel of this court must comport with prior panel decisions, until changed by this court acting en banc, or unless the Supreme Court either clearly holds or teaches to the contrary.") (emphasis added).
 
 
 27
 This Court, therefore, continues to adhere to its earlier ruling that ERISA does not shelter pension funds from inclusion in the bankruptcy estate unless the pension plan qualifies under state law as a "spendthrift trust." In re Goff, 706 F.2d at 587. A spendthrift trust is a type of trust "created to provide a fund for the maintenance of a beneficiary, with only a certain portion of the total amount to be distributed at any one time." Id. at 580. The Texas Property Code authorizes spendthrift trusts and specifies the criteria for their creation. Tex.Prop.Code Ann. § 112.035(a), (b) & (c) (Vernon 1984). Like all other states that recognize spendthrift trusts,[21] Texas forbids a person to place his own assets in trust and then, through a "spendthrift clause" or other form of restraint, to shield the assets from the claims of his current and future creditors. Id. § 112.035(d). Under Texas law, "[a] person is not allowed to make provision for his own support or comfort to the prejudice of his creditors." In re Brooks, 844 F.2d 258, 263 (5th Cir.1988).
 
 
 28
 The debtors contend that all ERISA-qualified retirement plans other than Keogh plans qualify under Texas law as spendthrift trusts. Noting that employee benefit plans under ERISA are trusts,[22] the debtors argue that ERISA section 1056(d)(1)--the antialienation provision--is a valid spendthrift clause which converts an otherwise ordinary trust into a spendthrift trust. This Court, however, has previously rejected this argument. In In re Brooks, the Court recognized that "self-settled" trusts are not spendthrift trusts under Texas law. 844 F.2d at 263.[23] Interpreting the term "self-settled" broadly, the Court reasoned that a beneficiary who enjoys "access to and control over" a pension plan is a settlor of the plan, even though another person or entity nominally created the plan. Id.
 
 
 29
 The debtor in In re Brooks, a medical doctor, held an interest in an ERISA-qualified pension plan which his professional association established and administered. Along with the other thirty-two members of the professional association, the debtor could borrow from the plan and determine the manner in which his funds in the plan would be invested. The Court noted that a pension plan which permits this degree of access "conflicts with the traditional purposes of spendthrift trusts," and it concluded that Texas spendthrift trust law does not permit debtors to "set aside part of what they earn, under terms and restraints of their own choosing, and shield such earnings from their creditors." Id.
 
 
 30
 Not all ERISA-qualified retirement plans, therefore, are spendthrift trusts: those retirement plans which are self settled do not qualify. And, in particular, if the beneficiaries of a plan enjoy access to and control over the funds in the plan, then the plan is not a spendthrift trust.[24] Under this rule, the retirement plans in these consolidated cases cannot qualify as spendthrift trusts. Debtor Marshall James Dyke is the sole trustee of his retirement plan and the sole shareholder in the professional association which created this plan. Debtor Amos Felts is a shareholder in the law firm which created his retirement plan and has served as an officer and director of the firm. In each case, the debtor has been able to enjoy considerable access to and control over the funds in his retirement plan. These plans are "self-settled" trusts and, accordingly, do not qualify as spendthrift trusts.
 
 
 31
 In sum, the ERISA antialienation provision--section 1056(d)(1) of ERISA--is not "applicable nonbankruptcy law" which would preclude creditors from reaching the assets in an ERISA-qualified retirement plan. This Court's decision in In re Goff, which is binding under the doctrine of stare decisis, concludes that the term "applicable nonbankruptcy law" under section 541(c)(2) of the Bankruptcy Code is limited to state spendthrift trust law. According to Texas law, the retirement plans in the instant cases do not qualify as spendthrift trusts. Thus, section 541(c)(2) does not authorize the debtors to exclude pension plans from their bankruptcy estates.
 
 
 32
 B. The Section 522(b)(2)(A) Exemptions--"Other Federal Law"
 
 
 33
 As a general rule, a bankrupt debtor who elects the state exemption scheme may not claim any of the federal exemptions specified in section 522(d) of the Bankruptcy Code. In re Goff, 706 F.2d at 579.[25] Instead, section 522(b)(2)(A) of the Bankruptcy Code permits a debtor who elects the state exemption scheme to remove from his bankruptcy estate (1) the property that is exempt under the law of his domicile and (2) the property that is exempt under federal law other than section 522(d) of the Bankruptcy Code. 11 U.S.C. § 522(b)(2)(A) (1988). The debtors in these consolidated cases argue that the antialienation provision of ERISA section 1056(d)(1) is "other federal law" which would authorize the exemption of ERISA-qualified pension plans.
 
 
 34
 This Court has previously considered the issue whether the ERISA antialienation provision is "other federal law." In In re Goff, the Court observed that the House and Senate Reports on Bankruptcy Code section 522(b)(2)(A) provided an illustrative list of the types of property a debtor can exempt under federal laws other than section 522(d).[26] This list does not include ERISA. The Court noted that, while this list is not exclusive, the failure of Congress to include ERISA in the list "is highly probative of congressional intent that ERISA was not within the group of 'federal law' based exemptions." 706 F.2d at 585. The Court concluded that ERISA section 1056(d)(1) is not "other federal law" and therefore does not provide an exemption that a debtor can claim under Bankruptcy Code section 522(b)(2)(A). Id. at 586.
 
 
 35
 The conclusion in In re Goff that ERISA section 1056(d)(1) is not "other federal law" was mere dicta: the Court need not have reached the question of the applicability of the "other federal law" exception.[27] It nonetheless did so, and its reasoning remains persuasive.[28] Indeed, several other courts have agreed that the ERISA antialienation provision is not "other federal law" which would support an exemption under Bankruptcy Code section 522(b)(2)(A). See, e.g., In re Daniel, 771 F.2d 1352, 1360 (9th Cir.1985), cert. denied, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); In re Lichstrahl, 750 F.2d 1488, 1491 (11th Cir.1985); In re Graham, 726 F.2d 1268, 1274 (8th Cir.1984).
 
 
 36
 The decision of the Eleventh Circuit in In re Lichstrahl is especially convincing. The Court in In re Lichstrahl explained the significance of ERISA's absence from the congressional list of federal laws which support an exemption under section 522(b)(2)(A):
 
 
 37
 excluding ERISA-qualified pension plans from the list of property exempted under federal law is consistent with an important distinction between exempted property and property covered by ERISA. Despite the similarity between the anti-alienation provisions of ERISA and some of the listed statutes, the "pensions, wages, benefits and payments included in the ... list are all peculiarly federal in nature, created by federal law or related to industries traditionally protected by the federal government. In sharp contrast, ERISA regulates private employer pension systems." ... It is this "peculiarly federal nature" shared by the cited statutes that identifies and determines which federal statutes are to be included within the "other federal law" exemption of § 522 and which, like ERISA, are to be excluded.
 
 
 38
 750 F.2d at 1491 (quoting In re Graham, 726 F.2d at 1274). The Eleventh Circuit concluded that because ERISA serves a different function from the illustrative federal laws cited in the congressional list, Bankruptcy Code section 522(b)(2)(A) did not permit the debtor to exempt ERISA-qualified pension plans from his bankruptcy estate. Id. at 1492.
 
 
 39
 We agree with our colleagues on the Eleventh Circuit that the ERISA antialienation provision is not "other federal law" which would support exemption under section 522(b)(2)(A). The congressional list of the federal laws that support a section 522(b)(2)(A) exemption implicitly limits the scope of the term "other federal law." Although the list does not delineate all of the laws that fall within section 522(b)(2)(A), it illustrates the distinctive characteristic of the applicable laws: they proscribe the assignment or alienation of benefits which are either created by federal law or related to industries traditionally protected by the federal government. The section 522(b)(2)(A) exemption, therefore, protects distinctively federal benefits a bankrupt debtor would otherwise forfeit in electing the state exemption scheme. ERISA, however, does not regulate distinctively federal benefits. Rather, ERISA regulates pension plans which are created by private employers. Private pension plan benefits are not the type of benefits that Congress envisioned section 522(b)(2)(A) would protect. Thus, the ERISA antialienation provision does not create an enforceable exemption under section 522(b)(2)(A).
 
 C. ERISA Preemption
 
 40
 Federal laws, within constitutional authority,[29] may preempt state law "to the extent it is believed that such action is necessary" to achieve an important federal purpose. City of New York v. FCC, 486 U.S. 57, 63, 108 S.Ct. 1637, 1642, 100 L.Ed.2d 48 (1988). The preemptive power of a federal law can be either expressed or implied in the statute or regulation. ERISA expressly preempts state law. According to ERISA section 514(a), the provisions of ERISA supersede "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a) (1982 & Supp. V 1987) (emphasis added). Section 514(a) is an expansive preemption clause. It is designed to ensure that regulation of employee benefit plans remains an exclusively federal concern. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987); Hansen v. Continental Ins. Co., 940 F.2d 971, 979 (5th Cir.1991).
 
 
 41
 There are several statutory exceptions to ERISA's expansive preemption clause.[30] One such exception, and the only exception which is relevant in the present situation, is ERISA section 514(d). This section provides that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under any such law." 29 U.S.C. § 1144(d) (1982 & Supp. V 1987). Section 514(d) ensures that ERISA does not impede either (1) other federal laws or (2) state laws which implement and enforce these other federal laws. See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 102, 103 S.Ct. 2890, 2902, 77 L.Ed.2d 490 (1983).
 
 
 42
 The creditors in these consolidated cases argue that ERISA preempts section 42.0021(a) of the Texas Property Code and precludes the state exemption of pension plans. The debtors offer two responses to the creditors' argument: (1) that the ERISA preemption clause does not apply because section 42.0021(a) of the Texas Property Code does not "relate to" employee benefit plans, and (2) that ERISA section 514(d) saves section 42.0021(a) of the Texas Property Code from preemption.[31]
 
 
 43
 1. ERISA Section 514(a)--The Preemption Provision
 
 
 44
 The term "relate to" is the trigger in the ERISA section 514(a) preemption clause: ERISA will not preempt a state law unless the state law relates to an employee benefit plan. In Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Supreme Court adopted a broad construction of the preemption clause. The Court concluded that a state law relates to an employee benefit plan "if it has a connection with or reference to such a plan." Id. at 97, 103 S.Ct. at 2900. Moreover, it noted that, even if a state law does not have an express connection with an employee benefit plan, ERISA preempts the state law "insofar as" the law applies to benefit plans in particular cases. Id. at 97 n. 17, 103 S.Ct. at 2900 n. 17.
 
 
 45
 Despite its broad construction of the ERISA preemption clause, however, the Court in Shaw indicated that it would not extend the "relate to" language beyond reasonable bounds. The Court observed that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." Id. at 100 n. 21, 103 S.Ct. at 2901 n. 21. It cited with apparent approval American Telephone & Telegraph Co. v. Merry, 592 F.2d 118, 121 (2d Cir.1979), a decision in which the Second Circuit ruled that ERISA did not preempt the state garnishment of benefit plan income in order to enforce alimony and support orders.
 
 
 46
 In a number of cases, federal courts have cited Shaw for the proposition that ERISA does not preempt state laws which affect benefit plans in a tenuous or remote manner. See, e.g., Aetna Life Ins. Co. v. Borges, 869 F.2d 142, 147 (2d Cir.) (ERISA does not preempt application of state escheat law to benefit checks and drafts), cert. denied, 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989); Firestone Tire & Rubber Co. v. Neusser, 810 F.2d 550, 556 (6th Cir.1987) (ERISA does not preempt municipal income tax that affects employee contributions to benefit plans); Sommers Drug Stores Employee Profit Sharing Trust v. Corrigan Enterprises, Inc., 793 F.2d 1456, 1466 (5th Cir.1986) (ERISA does not preempt application of state common law of corporate fiduciary duty against corporate director who is a benefit plan fiduciary), cert. denied, 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987); Rebaldo v. Cuomo, 749 F.2d 133, 139 (2d Cir.1984) (ERISA does not preempt state law which sets the rates that hospitals must charge private payors, including benefit plans), cert. denied, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985). These cases share a common attribute: the state law in each case was a law of general application.[32]
 
 
 47
 There is a fundamental distinction between state laws of general application and state laws which specifically refer to benefit plans. In Mackey v. Lanier Collection Agency & Service, Inc., 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the Supreme Court concluded that ERISA preempted a Georgia statute which barred the garnishment of "[f]unds or benefits of [an] ... employee benefit plan or program." Id. 108 S.Ct. at 2184 (quoting Ga.Code Ann. § 18-4-22.1 (1982)). Citing its decision in Shaw, the Court in Mackey reasoned that "state laws which make 'reference to' ERISA plans are laws that 'relate to' those plans within the meaning of § 514(a)." Id. 108 S.Ct. at 2185.[33] The Court commented that the Georgia statute's express reference to ERISA benefit plans was sufficient in itself to bring the statute within ERISA's preemptive reach. Id. Therefore, absent an applicable exception,[34] ERISA automatically preempts all state laws which specifically refer to ERISA benefit plans.[35] Such laws necessarily "relate to" employee benefit plans. The Shaw "exception"--that ERISA does not preempt state laws which affect benefit plans in a tenuous or peripheral manner--applies only to laws of general application; it does not protect state laws which specifically refer to ERISA benefit plans.
 
 
 48
 Section 42.0021(a) of the Texas Property Code is a state law which specifically refers to ERISA benefit plans. It provides that "a person's right to the assets held in or to receive payments, whether vested or not, under any stock bonus, pension, profit-sharing, or similar plan ... is exempt from attachment, execution, and seizure for the satisfaction of debts." Tex.Prop.Code Ann. § 42.0021(a) (Vernon Supp.1991) (emphasis added). Although this provision does not expressly mention the Employee Retirement Income Security Act of 1974,[36] it clearly encompasses ERISA-qualified benefit plans. Indeed, the very purpose of section 42.0021(a) is to permit Texas debtors to exempt ERISA-qualified pension plans under the state exemption scheme. The reference in the state law to "stock bonus, pension, profit-sharing or similar plans" is, accordingly, a specific reference to ERISA benefit plans. Absent an applicable exception, this Court must conclude that ERISA preempts section 42.0021(a).
 
 
 49
 2. ERISA Section 514(d)--The "Saving" Clause
 
 
 50
 Despite the expansive ERISA preemption clause, ERISA does not preempt rules and regulations which implement and enforce federal law. Section 514(d), a so-called "saving" clause in ERISA, expressly states that the terms of ERISA do not "alter, amend, modify, invalidate, impair, or supersede" other federal laws. 29 U.S.C. § 1144(d) (1982 & Supp. V 1987).[37] Interpreting section 514(d), the Supreme Court in Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), concluded that under certain circumstances ERISA also does not preempt state laws which enforce federal goals.
 
 
 51
 The plaintiffs in Shaw argued that ERISA did not preempt the New York Human Rights Law because preemption would "modify" or "impair" the enforcement of Title VII. The Supreme Court in large part agreed. Noting that Title VII permitted the states to create their own administrative procedures to correct unfair employment practices, the Court reasoned that state laws "play a significant role" in the enforcement of Title VII. Id. at 101, 103 S.Ct. at 2902. The Court concluded:
 
 
 52
 If ERISA were interpreted to pre-empt the Human Rights Law entirely with respect to covered benefit plans, the State no longer could prohibit the challenged employment practice and the state agency no longer would be authorized to grant relief.... This would frustrate the goal of encouraging joint state/federal enforcement of Title VII; an employee's only remedies for discrimination prohibited by Title VII in ERISA plans would be federal ones. Such a disruption of the enforcement scheme contemplated by Title VII would, in the words of § 514(d), "modify" and "impair" federal law.
 
 
 53
 Id. at 102, 103 S.Ct. at 2902-03.[38] The Court cautioned, however, that ERISA section 514(d) preserved only those provisions of the Human Rights Law which were consistent with Title VII--section 514(d) did not save from preemption any provisions of the state law which prohibited conduct that Title VII permitted. Id. at 103, 103 S.Ct. at 2903.
 
 
 54
 Like Title VII, the Bankruptcy Code relies on state law to assist in the implementation and enforcement of its goals. The principal goal of the Bankruptcy Code is to ensure that a debtor comes out of bankruptcy with adequate possessions to have a "fresh start." H.R.Rep. No. 95-595, 95th Cong., 2d Sess. 126, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 6087. The Code adopts a federal exemption scheme which satisfies this goal; but recognizing that circumstances are different in the various states, the Code also "permits the states to set exemption levels appropriate to the locale." Id. See 11 U.S.C. § 522(b)(2) (1988). If this Court were to interpret ERISA to preempt provisions of the state exemption schemes, the states would be unable to set enforceable exemption levels on retirement benefits. This would relegate many debtors to a federal exemption scheme which might be inappropriate to the locale. As a consequence, the enforcement scheme contemplated in the Bankruptcy Code would be modified and impaired.[39]
 
 
 55
 Under the specific language of ERISA section 514(d), this Court cannot construe ERISA to modify or impair the policies of other federal laws. The Bankruptcy Code, in particular, is a federal law that ERISA cannot disturb. See Pension Benefit Guaranty Corp. v. LTV Corp., 875 F.2d 1008, 1016 (2d Cir.1989), rev'd on other grounds, --- U.S. ----, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990); In re Nuttleman, 117 B.R. 975, 982 (Bankr.D.Neb.1990). The Texas legislature has created a state exemption scheme that, advances the principal goal of the Bankruptcy Code. One such exemption in this state scheme, section 42.0021(a) of the Texas Property Code, permits bankrupt debtors to exempt the funds in their retirement plans. Tex. Prop.Code Ann. § 42.0021(a) (Vernon Supp.1991). If the ERISA preemption clause is enforced against section 42.0021(a), the preemption clause would impair the ability of the Bankruptcy Code to ensure--through the Texas state exemption scheme--that Texas debtors can get a "fresh start" after bankruptcy. Accordingly, this Court concludes that ERISA section 514(d) saves the Texas state exemption scheme from preemption. ERISA does not preempt section 42.0021(a) of the Texas Property Code.
 
 
 56
 We note that we might have reached a different conclusion if the provisions of Texas Property Code section 42.0021(a) had been inconsistent with the provisions of the Bankruptcy Code. See Shaw, 463 U.S. at 103, 103 S.Ct. at 2903. Section 42.0021(a), however, is not inconsistent with the Bankruptcy Code. This section serves the same purpose as section 522(d)(10)(E) of the Bankruptcy Code: both provisions permit debtors to claim exemptions for their retirement benefits. Compare Tex. Prop.Code Ann. § 42.0021(a) (Vernon Supp.1991) with 11 U.S.C. § 522(d)(10)(E) (1988). Indeed, the sole reason that the Texas legislature added section 42.0021(a) to the Texas Property Code was to guarantee that Texas debtors had the same range of exemptions which were available in the federal exemption scheme. Because the Texas statute does not permit an exemption that the Bankruptcy Code prohibits--or vice versa--we conclude that ERISA does not preempt section 42.0021(a).[40]
 
 IV. CONCLUSION
 
 57
 While the scope of ERISA preemption is broad, ERISA does not preempt state laws which (1) assist in the implementation and enforcement of other federal laws and (2) are consistent with those other federal laws. Section 42.0021(a) of the Texas Property Code is a state law which assists in the implementation and enforcement of the principal goal of the Bankruptcy Code--to assure that a debtor can come out of bankruptcy with a "fresh start." It is consistent with the provisions of the Bankruptcy Code. Consequently, ERISA does not preempt it. The judgment of the district court in Heitkamp v. Dyke, No. 90-2421, is AFFIRMED. The judgment of the district court in FDIC v. Felts, No. 90-8491, is AFFIRMED.
 
 
 
 *
 Judge Rhesa Barksdale was a member of the panel that heard oral arguments but due to recusal did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. § 46(d)
 
 
 [1]
 Jordan v. Reliable Life Ins. Co., 694 F.Supp. 822, 827 (N.D.Ala.1988)
 
 
 [2]
 He claims a $1,170,000 interest in the pension plan--an amount which is more than ninety percent of the pension plan assets
 
 
 [3]
 On the date that the Felts filed their statement of financial affairs, Amos Felts's vested interest in the plans amounted to $940,907
 
 
 [4]
 The United Bank of Texas apparently was the Felts' principal creditor
 
 
 [5]
 See infra text accompanying notes 25-28
 
 
 [6]
 With certain exceptions beyond the scope of this opinion, the property in the bankruptcy estate is distributed to creditors. 11 U.S.C. § 726 (1988)
 
 
 [7]
 A state has three options under section 522(b): "(1) remain silent and allow the federal law to be the sole remedy, (2) draft an exemption schedule which partially or wholly precludes the 522(d) remedy, and (3) allow election between state and federal exemption provisions." Allen v. Hale County State Bank, 725 F.2d 290, 292 (5th Cir.1984). A number of states have "opted out" of the federal exemption scheme and created a separate state exemption scheme. In these states, a debtor may utilize the state exemption scheme, but not the federal exemption scheme. See In re McManus, 681 F.2d 353, 355-56 (5th Cir.1982). Texas is not one of the states that has opted out of the federal laundry list of exemptions
 
 
 [8]
 "The debtor may elect to exempt either as the 'federal' exemption the property set out in subsection (d) of Section 522 of the Code, or as the 'state' exemptions the property specified as exempted under the law of his domicile, plus property exempted by 'Federal law, other than subsection (d).' " In re Goff, 706 F.2d 574, 579 (5th Cir.1983) (emphasis in original). See Gote, The Texas Exemption of Retirement Benefits: Interaction with the Bankruptcy Code and Possible Preemption by Mackey v. Lanier Collections Agency & Service, 26 Hous.L.Rev. 497, 507 (1989) ("election of state exemptions makes available to a Texas debtor the general exemptions contained in the Texas Property Code, the special state statutes with specifically tailored retirement exemptions, and the other federal exemptions not contained in section 522(d) of the Bankruptcy Code.")
 
 
 [9]
 The Texas Property Code completely exempts a debtor's homestead "from seizure for the claims of creditors except for encumbrances properly fixed on homestead property." Tex.Prop.Code Ann. § 41.001(a) (Vernon Supp.1991). Federal law, on the other hand, permits a debtor to exempt only the first $7500 in value of real or personal property that the debtor uses as a residence. 11 U.S.C. § 522(d)(1) (1988). "Since a debtor's homestead will almost always be his largest asset, a Texas debtor will normally choose the state exemption scheme." Comment, Protecting ERISA Plans in Bankruptcy: Is There Still Hope for Texas Debtors?, 42 Baylor L.Rev. 757, 758 (1990) (authored by Scott C. Sanders)
 
 
 [10]
 11 U.S.C. § 522(d)(10)(E) (1988). The federal exemption is limited "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." Id
 
 
 [11]
 On its face, this provision merely requires that pension plans contain a notation that benefits may not be assigned or alienated. 29 U.S.C. § 1056(d)(1) (1982 & Supp. V 1987). The federal courts have concluded, however, that this provision formally prohibits the assignment or alienation of pension plan benefits. See, e.g., Guidry v. Sheet Metal Workers Nat'l Pension Fund, 493 U.S. 365, 110 S.Ct. 680, 687, 107 L.Ed.2d 782 (1990) (section 1056(d)(1) reflects "specific congressional directive that pension benefits not be subject to assignment or alienation."); Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 836, 108 S.Ct. 2182, 2188, 100 L.Ed.2d 836 (1988) (section 1056(d)(1) "bars ... the alienation or assignment of benefits provided for by ERISA pension benefit plans.") (emphasis in original); Retirement Fund Trust of the Plumbing, Heating and Piping Industry of Southern California v. Franchise Tax Board, 909 F.2d 1266, 1283 (9th Cir.1990); Smith v. Mirman, 749 F.2d 181, 183 (4th Cir.1984); General Motors Corp. v. Buha, 623 F.2d 455, 463 (6th Cir.1980); Commercial Mortgage Ins., Inc. v. Citizens Nat'l Bank, 526 F.Supp. 510, 516 (N.D.Tex.1981)
 
 
 [12]
 Keogh or H.R. 10 plans are retirement plans for self-employed individuals. These plans are established pursuant to the Keogh-Smathers Act, Pub.L. No. 87-792, 76 Stat. 809 (1962) (codified in scattered sections of the Internal Revenue Code)
 
 
 [13]
 Section 42.0021 protects all retirement plans that qualify under the applicable provisions of the Internal Revenue Code of 1986. Tex.Prop.Code Ann. § 42.0021(a) (Vernon Supp.1991). Excess individual retirement account contributions, which are not deductible under federal tax law, cannot be exempted. Id. § 42.0021(b)
 The burden to prove that a plan does not qualify under the Internal Revenue Code falls on the "person who seeks to reach benefits" despite the protection of section 42.0021(a). Hall, Retirement Benefits: Texas Property Code Amendment, 50 Tex.B.J. 993, 993 (1987).
 
 
 [14]
 This same issue has arisen in other states. Most bankruptcy courts, interpreting statutes similar to section 42.0021(a) of the Texas Property Code, have concluded that ERISA does not permit exemption of retirement plan benefits under a state exemption scheme. See, e.g., In re Starkey, 116 B.R. 259 (Bankr.Colo.1990); In re Hirsch, 98 B.R. 1 (Bankr.Ariz.1989); In re Brown, 95 B.R. 216 (Bankr.N.D.Okla.1988)
 
 
 [15]
 See supra note 11
 
 
 [16]
 The Court in In re Goff noted that the legislative history of section 541(c)(2) specifically recognized that state spendthrift law was "applicable nonbankruptcy law," but the legislative history did not acknowledge whether other statutes were "applicable nonbankruptcy law." 706 F.2d at 581-82. The Court concluded that, if Congress had intended to include federal statutes as "applicable nonbankruptcy law," it would have expressly referred to federal law in section 541(c)(2)
 
 
 [17]
 The Court observed that, while ERISA preempts state law, it does not affect the operation of other federal law. 706 F.2d at 587. See 29 U.S.C. § 1144(d) ("Nothing in this [Act] shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States [except pre-existing federal pension law] or any rule or regulation issued under such law."). See infra text accompanying notes 37-40
 
 
 [18]
 The courts which have rejected In re Goff have reasoned that the antialienation provision in ERISA is enforceable as "applicable nonbankruptcy law" under section 541(c)(2) of the Bankruptcy Code. See In re Lucas, 924 F.2d 597, 601 (6th Cir.1991) ("we reject the position of those courts which rely on the legislative history to conclude that 'applicable nonbankruptcy law' refers exclusively to state spendthrift law."); In re Moore, 907 F.2d 1476, 1477 (4th Cir.1990) (" 'Applicable nonbankruptcy law' means precisely what it says: all laws, state and federal, under which a transfer restriction is enforceable. Nothing in the phrase 'applicable nonbankruptcy law' or in the remainder of § 541(c)(2) suggests that the phrase refers exclusively to state law, much less to state spendthrift trust law.")
 
 
 [19]
 See 11 U.S.C. § 522(d)(10)(E) (1988) (with certain enumerated exceptions, a debtor may exempt from the bankruptcy estate his right to receive "a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor...."); see also supra note 10
 
 
 [20]
 If this Court were to conclude that all retirement plans are excluded from the bankruptcy estate under section 541(c)(2), then we would render Bankruptcy Code section 522(d)(10)(E), which authorizes the exemption of retirement plans, mere surplusage. We do not suggest, however, that retirement plans cannot ever be excluded under section 541(c)(2). ERISA-qualified retirement plans are protected "under the Section 541 exclusion provision so long as they qualify as a 'spendthrift trust' under the applicable state law." In re Goff, 706 F.2d at 587. Cf. In re Threewitt, 24 B.R. 927, 930 (D.Kan.1982) (reasoning that section 522(d)(10)(E) is broader than section 541(c)(2), and that it is not "remarkable that Congress did not bother to further complicate an already complex code by taking pains to insure that there was no overlap" between the sections.)
 
 
 [21]
 Of course, some states do not authorize spendthrift trusts. Even in those states which authorize such trusts, some permit the settlor to shield only a part of the assets of a spendthrift trust from creditors. G. Bogert & G. Bogert, Trusts & Trustees § 221, at 407 & n. 87 (1979)
 
 
 [22]
 29 U.S.C. § 1103 (1982 & Supp. V 1987) (with certain enumerated exceptions, "all assets of an employee benefit plan shall be held in trust by one or more trustees.")
 
 
 [23]
 Even though the Court rendered its decision in early 1988--several months after the effective date of Texas Property Code section 42.0021(a)--the Court in In re Brooks declined to apply section 42.0021(a). Noting that this section "does not purport to be retroactive," the Court applied the law in effect at the time that the debtor in In re Brooks filed for bankruptcy. 844 F.2d at 261
 
 
 [24]
 We do not purport in this opinion to fashion a test for determining whether an ERISA-qualified pension plan is a spendthrift trust. In these consolidated cases, it is sufficient that we note that a pension plan is not a spendthrift trust if the beneficiary enjoys access to and control over the plan. There are conceivable instances in which a pension plan might qualify as a spendthrift trust: for instance, a pension plan which a large corporation operates for all of its employees who are not officers or directors of the corporation might constitute a spendthrift trust. However, we need not and do not make this determination here
 
 
 [25]
 An exception to this general rule might exist--at least conceptually--if a state creates a separate exemption scheme that incorporates all of the federal exemptions specified in section 522(d). However, this situation is not before the Court today. We express no opinion concerning the effect of this hypothetical exemption scheme
 
 
 [26]
 The House and Senate Reports identified the following types of exempted property:
 Foreign Service Retirement and Disability payments, 22 U.S.C. § 1104;
 Social Security payments, 42 U.S.C. § 407;
 Injury or death compensation payments from war risk hazards, 42 U.S.C. § 1717;
 Wages of fishermen, seamen and apprentices, 46 U.S.C. § 601;
 Civil service retirement benefits, 5 U.S.C. §§ 729, 2265;
 Longshoremen's and Harbor Workers' Compensation Act death and disability benefits, 33 U.S.C. § 916;
 Railroad Retirement Act annuities and pensions, 45 U.S.C. § 228l ;
 Veterans benefits, 45 U.S.C. § 352(e);
 Special pensions paid to winners of the Congressional Medal of Honor, 38 U.S.C. § 3101; and
 Federal homestead lands on debts contracted before issuance of the patent, 43 U.S.C. § 175.
 See S.Rep. No. 989, 95th Cong., 2d Sess. 75, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5861; H.R.Rep. No. 595, 95th Cong., 2d Sess. 360, reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6316. The legislative history of section 522(b)(2)(A) provides no further indication of the intended scope of this section.
 
 
 [27]
 The Court in In re Goff determined that consideration of the scope of Bankruptcy Code section 522(b)(2)(A) would aid its ability to explain the scope of the "applicable nonbankruptcy law" exclusion under section 541(c)(1). 706 F.2d at 582. However, the Court admitted that the "other federal law" exemption was "not directly involved" in the facts of the case. Id
 
 
 [28]
 Although dicta is not binding authority, it is persuasive authority. See Society of Separationists, Inc. v. Herman, 939 F.2d 1207, 1211 (5th Cir.1991); Nicor Supply Ships Ass'n v. General Motors Corp., 876 F.2d 501, 506 (5th Cir.1989); O'Dell v. North River Ins. Co., 614 F.Supp. 1556, 1559 (D.La.1985)
 
 
 [29]
 The concept of federal preemption originates in the Supremacy Clause of the United States Constitution. The Supremacy Clause provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby...." U.S. Const. art. VI, cl. 2 (emphasis added)
 
 
 [30]
 Many of these exceptions are located in ERISA section 514(b). This section excludes a number of state laws from the preemptive power of ERISA, including (1) causes of action which arose before January 1, 1975; (2) laws which regulate insurance, banking or securities; (3) criminal laws; (4) qualified domestic relations orders; and--curiously--(5) the Hawaii Prepaid Health Care Act. 29 U.S.C. § 1144(b)(1), (2), (4), (5) & (7) (1982 & Supp. V 1987)
 
 
 [31]
 The debtors also argue that ERISA does not preempt section 42.0021(a) of the Texas Property Code because section 42.0021(a) does not "regulate" the terms and conditions of employee benefit plans. They contend that ERISA section 514(c)(2), which defines the term "State," contains language which limits ERISA's preemptive effect. Section 514(c)(2) provides:
 The term "State" includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter.
 29 U.S.C. § 1144(c)(2) (1982 & Supp. V 1987) (emphasis added). According to the debtors, if a state law does not purport to regulate the terms and conditions of employee benefit plans, then it is not preempted. In the recent decision of Ingersoll-Rand Co. v. McClendon, --- U.S. ----, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), however, the Supreme Court rejected this same argument. The Court reasoned that section 514(c)(2) is expansive, not restrictive. The purpose of the section is to expand the preemptive scope of ERISA to cover the actions of state agencies and instrumentalities; it does not restrict ERISA's preemptive scope to state laws which purport to regulate the terms and conditions of employee benefit plans. Id. 111 S.Ct. at 484.
 
 
 [32]
 See Sommers Drug Stores Employee Profit Sharing Trust, 793 F.2d at 1465 ("ERISA does not preempt state laws of general application that indirectly affect benefit plans."); Rebaldo, 749 F.2d at 139 (when "a State statute of general application does not affect the structure, the administration, or the type of benefits provided by an ERISA plan, the mere fact that the statute has some economic impact on the plan does not require that the statute be invalidated.")
 
 
 [33]
 The language in Mackey is different from the language in Shaw. Compare Mackey, 108 S.Ct. at 2185 ("state laws which make 'reference to' ERISA plans" are preempted) with Shaw, 463 U.S. at 96-97, 103 S.Ct. at 2900 (a state law which "has a connection with or reference to" ERISA plans is preempted). Some commentators have argued that the language in Mackey expands ERISA's preemptive effect beyond that which the Court anticipated in Shaw. See Comment, supra note 9, at 786 ("The Court's statement that a law 'relates to' ERISA plans if it 'makes reference to' such plans is a dramatic change from the previous rule that a law must 'have reference to' ERISA plans in order to trigger preemption."); see also In re Volpe, 100 B.R. 840, 848 (Bankr. W.D. Tex.1989) ("it appears that the Supreme Court [in Mackey ] fell victim to the allure of a well-turned phrase.... I submit that there is a difference, if not a vast difference, between 'makes reference to' and 'has reference to.' "). Regardless whether Mackey expanded the rule in Shaw, however, the rule in Mackey is the most recent pronouncement of the Supreme Court, and this Court is required to follow it
 
 
 [34]
 See infra text accompanying notes 37-40
 
 
 [35]
 Aside from the statutory exceptions, a common-sense exception to this rule may be appropriate in a case in which a state law mentions ERISA benefit plans, but does not affect ERISA benefit plans. For example, it is possible that ERISA will not preempt a state law which specifically states that its provisions "do not apply to ERISA benefit plans." In such a situation, even though the law technically refers to ERISA benefit plans, it would seem unreasonable to conclude that ERISA's preemptive effect bars enforcement of the state law. Such a situation, however, does not confront us here
 
 
 [36]
 Section 42.0021(a) contains only a passing reference to ERISA itself. See Tex. Prop.Code Ann. § 42.0021(a) (Vernon Supp.1991) ("A person's right to the assets held in or to receive payments, whether vested or not, under government or church plan or contract is also exempt unless the plan or contract does not qualify under the definition of a government or church plan under the applicable provisions of the federal Employee Retirement Income Security Act of 1974."). Nonetheless, while section 42.0021(a) contains little reference to ERISA itself, it clearly refers to ERISA benefit plans
 
 
 [37]
 Of course, in cases in which a specific provision of ERISA applies, section 514(d) does not require that the courts ignore ERISA in favor of some other federal law. The specific provisions of ERISA will supersede the general provisions of other federal laws. Guidry v. Sheet Metal Workers Nat'l Pension Fund, 493 U.S. 365, 110 S.Ct. 680, 687, 107 L.Ed.2d 782 (1990). In the instant situation, however, there is no controlling ERISA provision
 
 
 [38]
 The Court in Shaw cautioned against an expansive interpretation of section 514(d). In particular, the Court rejected the plaintiffs' "simplistic" double saving clause argument--"that because ERISA does not pre-empt Title VII, and Title VII does not pre-empt state fair employment laws, ERISA does not pre-empt such laws." 463 U.S. at 101 n. 22, 103 S.Ct. at 2902 n. 22. The Court observed that Title VII does not transform state fair employment laws into federal laws that would automatically receive the protection of ERISA section 514(d)
 
 
 [39]
 See Gote, supra note 8, at 526 ("The Bankruptcy Code would be impaired by the inability of states to design exemptions for retirement benefits consistent with the objectives of ERISA. In essence, such preemption of state laws not in conflict with ERISA frustrates the goals of ERISA and impairs the operation of the Bankruptcy Code in contradiction of ERISA section [514(d) ].")
 
 
 [40]
 We recognize that there is some difference between the federal and state exemptions for retirement benefits. The Texas exemption does not limit the amount of the benefits that the debtor can exempt from the bankruptcy estate. Tex. Prop.Code Ann. § 42.0021(a) (Vernon Supp.1991). The federal exemption, on the other hand, limits the exemption to an amount "reasonably necessary for the support of the debtor." 11 U.S.C. § 522(d)(10)(E) (1988). Nonetheless, we are unable to conclude that this difference is so significant that the state exemption is "inconsistent" with the federal exemption. While there is a distinction between the state and federal exemptions, they are not clearly inconsistent