**Larry CALHOUN**

**v.**

**FDIC and Landmark Bank Northwest.**

**Civ. A. No. 4–85–846–E.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Jan. 23, 1987.

Chaplin & Drysdale, Washington, D.C., Thomas L. Farris, Fort Worth, Tex., for plaintiff.

Louis Weber, Brian Hurst, Jenkens & Gilchrist, Dallas, Tex., R.H. Wallace, Shannon, Gracey, Ratliff & Miller, Fort Worth, Tex., for defendants.

## ORDER

MAHON, District Judge.

Defendants filed a motion to dismiss to which plaintiff responded with an opposition and cross-motion for summary judgment. A conference was held on the motions before the Honorable Eldon B. Mahon. After careful review of the briefs and affidavits attached thereto, the oral arguments, the pleadings, and the applicable law, the Court comes to the following decision.

Plaintiff was the sole owner, Chairman of the board, and chief executive officer of Northwest Bank in White Settlement, Texas (the Bank), a state-chartered bank whose deposits were insured by the FDIC. On May 23, 1985, the Texas Banking Commissioner declared the Bank insolvent, took possession of the Bank, and tendered the appointment as Receiver of the Bank to the FDIC. The FDIC accepted the appointment as Receiver of the Bank and on May 23, 1985, entered into a purchase and assumption agreement with Landmark Bank-Northwest (Landmark) whereby Landmark assumed the Bank's deposit liabilities and purchased certain of the Bank's assets. The FDIC as Receiver of the Bank conveyed the remainder of the Bank's assets, consisting almost exclusively of nonperforming commercial loans, to the FDIC in its corporate capacity for collection and in consideration of the FDIC's payment to Landmark of $23,943,000.00 for Landmark's assumption of the Bank's deposit liabilities.

On April 11, 1985, over a month before the Bank was closed, the Bank's board of directors met and voted to terminate its Thrift Incentive Plan and Trust (the Plan), liquidate its assets, and distribute the proceeds to the Plan participants, subject to receiving confirmation from the Bank's counsel of the propriety of the termination. The Bank's counsel confirmed the propriety of the termination, and at a meeting on April 17, 1985, the Bank's board voted to finalize the Plan's termination. According to the affidavit of Archie Freeman the board also voted to retain plaintiff's share of the Plan proceeds until further directions were received from counsel.

Upon assuming the Receivership of the Bank on May 23, 1985, the FDIC withheld payment of the insured deposits in Account Nos. 6502744 and 6502793 pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C. § 1822(d). Section 1822(d) provides that:

> The [FDIC] may withhold payment of such portion of the insured deposit of any depositor in a closed bank as may be required to provide for the payment of any liability of such depositor as a stockholder of the closed bank, or of any liability of such depositor to the closed bank or its receiver, which is not offset against a claim due from such bank, pending the determination and payment

of such liability by such depositor or any other person liable therefor.

According to the affidavit of Ivy Walker the FDIC withheld payment of plaintiff's deposits pending determination of plaintiff's ultimate liability to the FDIC. At the date of the Bank's closing, plaintiff owed nearly $600,000.00 to the Bank under two promissory notes which were and are in default. In addition, the FDIC's preliminary investigation of the Bank's loan portfolio has already revealed $3,325,826.48 in documented losses caused by plaintiff's improper banking practices, and the FDIC expects to be able to document another $9,000,000.00 in losses attributable to plaintiff (not including the $600,000.00 in notes from Calhoun described above). According to the affidavit of Archie Freeman the FDIC has also discovered additional losses of approximately $6,000,000.00 attributable to plaintiff's appropriation of business opportunities from the Bank. As receiver, the FDIC is required to make an attempt to recoup these losses from plaintiff and his fellow officers and directors. The $53,-353.82 in plaintiff's deposit accounts represent the only known source for collection of the judgment the FDIC may ultimately obtain against plaintiff. Until the final determination of plaintiff's liability to the FDIC is made, plaintiff's deposits remain in segregated, interest-bearing, FDIC-insured accounts.

Plaintiff alleges that this Court has subject matter jurisdiction of this case under ERISA to recover vested and nonforfeitable pension plan benefits due him under the Northwest Bank Thrift Incentive Plan and Trust. Defendant claims that plaintiff cannot establish jurisdiction under ERISA because (1) the Plan was terminated by the Bank's board before the FDIC became Receiver of the Bank and (2) the Bank's board withheld payment of plaintiff's insured deposits. Additionally, defendant claims that assuming that ERISA does apply, then the FDIC does not owe fiduciary duties to plaintiff under ERISA and the FDIC's withholding payment of plaintiff's deposits did not violate ERISA. Additionally defendants argue that the FDIC's withholding payment of plaintiff's deposits did not violate ERISA's non-alienability provision. Plaintiff further contends that the FDIC has unlawfully attached these benefits and has prohibited Landmark, the bank which now holds these funds as a deposit, from releasing them to plaintiff.

From the evidence presented, it is undisputed that the Bank's board of directors terminated the Plan no later than April 17, 1985, over a month before the Bank failed and the FDIC became Receiver. The Plan was properly terminated in accordance with the Plan's voluntary termination provisions. All managerial and discretionary acts with respect to the Plan and its assets were done by an administrative committee appointed by the Bank's board not the FDIC.

■ Plaintiff alleges that the FDIC became Plan Administrator or a "fiduciary" of the Plan as defined in ERISA, and thereby undertook the many fiduciary responsibilities toward Plan beneficiaries prescribed by ERISA. Aside from the fact that the Plan was terminated before the FDIC became Receiver of the Bank, Plaintiff's contention is refuted by the plain language of the statute and federal court rulings.

A "plan administrator" is defined by ERISA as the person designated by the plan itself, or the employer. 29 U.S.C. § 1002(16)(A). The Bank was the designated administrator under the Plan, but all administrative, managerial, and discretionary functions were performed by the Plan's trustee and an administrative committee appointed by the Bank's board of directors.

More importantly, the FDIC does not fall within the broader definition of a fiduciary under the Plan. ERISA defines a person as a fiduciary to the extent

(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other

property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 405(c)(1)(B) [29 § 1105(c)(1)(B)].

29 U.S.C. § 1002(21)(A).

In *O'Toole v. Arlington Trust Company*, 681 F.2d 94 (1st Cir.1982), the First Circuit Court of Appeals held that a depository institution holding pension plan funds was not a fiduciary of the pension plans under ERISA, even when the institution exercised its common law setoff rights against the funds. The plaintiffs in *O'Toole* were the officers of three nursing homes and trustees of the pension plans established by the homes for their employees. The assets of the pension plans were on deposit with defendant Arlington Trust Company, which had several loans outstanding to the homes. Arlington Trust learned that the homes were in financial difficulty and offset the pension plans' deposits against the outstanding loans to the homes. Plaintiffs sued Arlington Trust in federal court to enjoin the offset, alleging subject matter jurisdiction under ERISA, 29 U.S.C. § 1132.

The district court dismissed the action for want of subject matter jurisdiction under ERISA, and the Court of Appeals specifically affirmed the dismissal on that ground. The Court of Appeals observed that jurisdiction under ERISA exists if a participant, beneficiary or fiduciary of an ERISA pension plan claims breach of the duties of a fiduciary, or if one of those parties seeks to enjoin an act that violates a provision of ERISA. *O'Toole*, 681 F.2d at 95; 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3)(A).

The Court of Appeals first found that Arlington Trust was not a fiduciary within the meaning of ERISA, stated that:

ERISA defines an individual as a fiduciary to the extent he exercises discretionary control or authority over the plan, its assets, or its administration or renders investment advice. *Id.* § 1002(21)(A).

In addition, it creates an extremely specific scheme of duties and liabilities for fiduciaries. *See id.* § 1104 (fiduciary duties); § 1105 (liability for breach of co-fiduciary); § 1106 (prohibited transactions by fiduciaries). Appellee's responsibilities as the depository for the funds do not include the discretionary, advisory activities described by the statute-activities which in fact were performed by appellants. In the absence of these activities, it would be unfair to impose on appellee the responsibilities and liabilities created by the statute for fiduciaries. *See Robbins v. First American Bank of Virginia*, 514 F.Supp. 1183, 1189–91 (N.D.Ill.1981); *cf. Hibernia Bank v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 411 F.Supp. 478, 489–90 (N.D.Cal.1976).

*Id.* at 96.

The Court of Appeals next considered and rejected plaintiffs' contention that Arlington Trust's offset of the pension plan funds created ERISA jurisdiction as a violation of ERISA's provision that plan funds may not be assigned or alienated. 29 U.S.C. § 1056(d). The court observed that Section 1056(d) addressed the individual beneficiaries' rights of access to plan funds, and did not affect the depository's right to offset the plan funds against valid debts. The court affirmed the dismissal of plaintiffs' ERISA claims, concluding that:

In sum, we find no reason to conclude that ERISA explicitly or impliedly would extend federal jurisdiction to appellants' claim that the depository improperly invaded the corpus of the fund.

*Id.* at 97.

Because the FDIC's authority to withhold payment of insured deposits under Section 1822(d) arises from a federal statute, not just a state law setoff right, the *O'Toole* holding controls with even more convincing force in the circumstances of this case. Moreover, as discussed below, the FDIC's statutory authority to withhold payment of insured deposits of those indebted to failed banks is not re-

stricted by ERISA's non-alienability provision. Plaintiff's factual allegations, even if accepted as true, fail to demonstrate that the FDIC has fiduciary obligations to plaintiff under ERISA, or that the FDIC's withholding payment of plaintiff's deposits violated ERISA.

Section 1056(d)(1) of ERISA provides that:

> Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

For a pension trust to be qualified under Section 401(a)(13) of the Internal Revenue Code, the plan establishing the trust must provide that benefits under the trust may not be assigned or alienated. 26 U.S.C. § 401(a)(13). This requirement is amplified by the attendant Treasury Regulation, which requires that the plan establishing the trust provide that benefits may not be

> [A]nticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process.

Treas.Reg. § 1.401(a)–13 (1978). Section 17 of the Bank's Plan provides, as required by law, that benefits under the Plan shall not be subject to alienation or assignment. Section 17 and the statutes requiring this provision might be read to facially conflict with the FDIC's right to withhold payment of the insured deposits of persons indebted to banks of which the FDIC is receiver.[1] 12 U.S.C. § 1822(d).

■ Where there is an apparent conflict in the operation of two statutes affecting the same subject matter, the statutes are to be given effect consistent with each other whenever possible. *Columbia Gas Development Corp. v. Federal Energy Regulatory Commission*, 651 F.2d 1146, 1158 (5th Cir.1981). There are several factors which compel the conclusion that Section 1822(d) of the Federal Deposit Insurance Act is not subject to the non-alienability provision of ERISA, and gives the FDIC power to withhold payment of pension plan benefits along with other types of insured deposits.

■ First, ERISA specifically provides that it does not preempt existing federal law:

> Nothing in this title shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 111 and 507(b)) or any rule or regulation issued under any such law.

29 U.S.C. § 1144(d).[2] As noted by Judge Barefoot Sanders in *Commercial Mortgage Insurance Inc. v. Citizens National Bank of Dallas*, 526 F.Supp. 510 (N.D.Tex.1981),

> The legislative history of ERISA indicates that Congress, while attempting to formulate legislation concerning employee benefit plans, devoted considerable attention to the question of preemption.

*Id.* at 521. The result was a sweeping preemption of state law and a specific disavowal of any intention to affect existing federal law. *Id.; see* 29 U.S.C. § 1144(d).

The Fifth Circuit has consistently held that ERISA is subordinate to other federal statutes. *See e.g., In the Matter of Goff*, 706 F.2d 574 (5th Cir.1983) (ERISA was not intended to affect the operation of other federal laws including federal bankruptcy laws); *Bonin v. American Airlines, Inc.*, 621 F.2d 635 (5th Cir.1980) (ERISA was not intended to preempt the mandatory arbitration provisions of the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.*). In *Goff*, the Fifth Circuit stated:

> It is well to make a final telling observation on the relationship between ERISA and the Bankruptcy Code. While ERISA preempts state law, 29 U.S.C.

---

1. Technically, the FDIC is not withholding payment of plaintiff's deposits at all; rather, the FDIC is withholding payment of *FDIC insurance proceeds* funded to Landmark in consideration of Landmark's assumption of the deposit liability which plaintiffs' accounts represent. The FDIC contends, however, that its authority under Section 1822(d) is not restricted by ERISA's non-alienability provision regardless of the source of the deposit funds withheld.

2. The excepted sections pertain to the Welfare and Pension Plans Disclosure Act and employee benefit plans for employees of the United States, and are not relevant to this case.

§ 1144(a), it clearly was not intended to affect the operation of other federal law.... As we have already discussed, the Bankruptcy Code was, generally, intended to broaden the "property of the estate" available to creditors in bankruptcy and, specifically, intended to limit any exemption of pension funds. These policy-based provisions of the Code would be frustrated were ERISA's anti-alienation and assignment provisions applied with a sweeping brush. *Thus, ERISA's specific provision precluding interference with the operation of federal law renders the Bankruptcy Code effective over any ERISA provisions to the contrary.*

*Goff,* 706 F.2d at 586–87 (emphasis added).

Likewise, the Congressional policies underlying the Federal Deposit Insurance Act and Section 1822(d) thereof would be frustrated were ERISA's non-alienability provision found to limit the FDIC's right to withhold payment of the insured deposits of persons indebted to a failed bank. The FDIC serves a vital role in maintaining public confidence in the United States banking system by insuring depositors against losses caused by the negligent and often fraudulent acts of bank directors and officers. The FDIC must recover from the culpable principals of a failed bank losses which the FDIC has made good to the bank's depositors. The FDIC's authority to withhold payment of the deposits of persons indebted to a failed bank is essential if the FDIC is to successfully bring those responsible for the bank's demise to account, and to replenish the FDIC's insurance fund. As described in the Affidavits of Ivy Walker and Archie Freeman attached hereto, plaintiff not only has $600,-000.00 in promissory notes owing to the Bank, he has caused documented losses to the Bank of $3,325,826.48, and is believed to have caused further as yet undocumented losses exceeding $15,000,000.00, precipitating the Bank's failure. If the FDIC's authority to withhold payment of plaintiff's deposits is not upheld, the FDIC may be losing its only source of recovery on the judgment it may eventually obtain

against plaintiff. An adverse ruling for the FDIC would make pension plan accounts a "safe harbor" for the funds of bank insiders whose wrongdoing contributes to the bank's failure.

ERISA's non-alienability provision has never been an absolute shield for pension benefit from the claims of creditors. The Eleventh Circuit Court of Appeals recently held that an employee's pension fund interest may be garnished to satisfy liabilities arising from the employee's criminal misconduct toward his employer. In *St. Paul Fire and Marine Insurance Co. v. Cox,* 752 F.2d 550 (11th Cir.1985), defendant Cox was the former president of Alabama City Bank of Gadsden, Alabama, and had been convicted of embezzling bank funds. The bank collected the amount of the embezzlement from its surety, plaintiff St. Paul Fire and Marine Insurance Company ("St. Paul"). St. Paul, then subrogated the the bank's rights against Cox, obtained a judgment against Cox for the amount of the embezzlement. St. Paul then instituted a garnishment proceeding against Cox's vested interest in the bank's pension and profit sharing plan, which proceeding is the subject of the cited case. The district court held that the non-alienability provisions of ERISA and the pension plan itself did not preclude St. Paul's garnishment of Cox's benefits, from which decision Cox appealed.

The Court of Appeals noted the many implied exceptions to ERISA's non-alienability provision which have been found by district courts. The court observed that:

Of prime importance to the courts in considering implied exceptions to the non-alienation provisions have been the congressional objectives behind ERISAS, and the effect of the proposed exceptions on those goals....

ERISA was established to protect "the continued well-being and security of millions of employees and their dependents" by providing "minimum standards ... assuring the equitable character of [pension fund] plans and their financial soundness." 29 U.S.C.A. § 1001(a). These standards are intended to protect

the employee against mismanagement or the provision of misinformation by the employer. *The legislation provides no indication whatsoever that it is intended to protect the employee against the consequences of his own misdeeds....* The insulation of an employee from liability for the consequences of his criminal misconduct does not protect the financial interests of other employees or promote security in the workplace.... *There is no reason to conclude that ERISA requires the abrogation of the equitable principle that a wrongdoer should not benefit from his misdeeds.*

*Id.* at 552 (emphasis added). The court concluded that garnishment undertaken to satisfy liabilities arising from criminal misconduct toward an employer constitutes an exception to the non-alienability provisions of ERISA. *Id.*

The principle of the *St. Paul* decision applies even more forcefully in this case, where the FDIC has withheld payment of plaintiff's deposits not under state law but under the authority of federal law, the operation of which ERISA cannot affect. 29 U.S.C. § 1144(d). Plaintiff's situation is very similar to that of Cox in the *St. Paul* case, except that plaintiff's wrongdoing contributed to the outright failure of Northwest Bank, and the FDIC became plaintiff's creditor through its purchase of the Bank's loan portfolio and rights of action. Equity requires that plaintiff not be allowed to walk away with benefits accrued while plaintiff was in the process of bankrupting the Bank.

■ Plaintiff has not alleged that Landmark violated any fiduciary duties toward plaintiff, or that Landmark violated ERISA in any way. Plaintiff has not stated any cognizable claim against Landmark, and apparently named Landmark as a defendant merely to bring it within the Court's power. Landmark is not a real party in interest as it merely holds plaintiff's deposits at the instruction of the FDIC, pursuant to the purchase and assumption agreement between Landmark and the FDIC.

Accordingly, the Court GRANTS defendants FDIC's and Landmark's motion to dismiss or for summary judgment [3] for want of jurisdiction and for failure to state a claim upon which relief may be granted.

---

**3.** Since the Court considered evidence outside the pleadings in disposing of this motion, defendant's motion will be considered a motion for summary judgment pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.