Benny D. ADDISON, Plaintiff,

v.

SEDCO FOREX, U.S.A., Sedco Forex Maritime Overseas, Inc., Schulumberger Technology Corporation, d/b/a Sedco Forex, and Sedco Forex International Resources, Inc., Defendants.

Civ. A. No. 3–92–CV–817–H.

United States District Court,
N.D.Texas,
Dallas Division.

July 27, 1992.

George Chandler and Jeffrey Bates, Law Offices of George Chandler, Lufkin, Tex., for plaintiff.

John R. deSteiguer, John V. Jansonius, Haynes & Boone, Dallas, Tex., for defendants.

### MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court are Plaintiff Addison's Motion for Remand, filed May 22, 1992, and Defendants' (collectively "Forex") Opposition thereto, filed June 8, 1992. Addison has filed no reply, *see* Local Rule 5.1(f), and his motion now applies to his cause of action as represented in Plaintiff's First Amended Original Complaint ("Amended Complaint"), filed without objection June 29, 1992.[1]

### I. Background

Addison's complaint alleges the following: Addison was employed by Forex[2] as an oil rig driller when he was injured on the job on July 6, 1989. Based on the injury, Addison filed a workers' compensation claim. Sometime after the filing of that claim, Forex terminated Addison. Addison then filed this suit in the 68th Judicial District Court of Dallas County, Texas, on March 16, 1992, alleging wrongful/retaliatory discharge and citing the Texas Workers' Compensation Act. Addison's complaint seeks, *inter alia*, lost wages, emotional distress damages, and "damages due to the loss of (certain employment) benefits." Amended Complaint at ¶ 5.[3]

Forex removed the case to this Court on April 23, 1992, asserting federal question jurisdiction under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. Addi-

son now requests remand, claiming that he sues only for wrongful/retaliatory discharge.

### II. Workers' Compensation Claim Status

The Court first addresses whether the retaliatory discharge claim was removable. While complete diversity exists in this case, *see* Amended Complaint at ¶¶ 1–2, Addison's claim must clear a different jurisdictional hurdle.

Section 1445 of Title 28 of the United States Code provides that, "(a) civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." 28 U.S.C.A. § 1445(c) (West Supp.1992). As used in section 1445(c), the phrase, "arising under," has the same meaning as it does in the federal question jurisdiction provision, section 1331 of the same title. *See Jones v. Roadway Express, Inc.*, 931 F.2d 1086, 1092 (5th Cir.), *reh'g denied*, 936 F.2d 789 (1991). For the purposes of section 1331, " '(a) suit arises under the law that creates the cause of action.' " *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1178 (5th Cir.1984) (quoting *Cox v. International Union of Operating Engineers*, 672 F.2d 421, 422 [5th Cir.1982] ). Therefore, as this Court concluded elsewhere based on the same authorities, "for the purposes of (section) 1445(c), a cause of action arises under a state's workers' compensation laws if the cause of action is created by the workers' compensation statute."[4] *Eurine v. Wyatt Cafeterias, Inc.*, No. 3–91–408–H, 1991 WL 207468, at *1 (N.D.Tex. Aug. 21, 1991).

---

**1.** The Amended Complaint simply added an omitted defendant and made no changes material to this motion.

**2.** Addison states that he was employed by "Defendants." Amended Complaint at ¶ 4.

**3.** Specifically, Addison's Amended Complaint alleges that,

Defendants (sic) misconduct has caused him to lose certain other rights that he would have had to greater pension rights, group insurance rights, as well as hospitalization, medical, and life insurance, that were all terminated as a

result of his wrongful discharge. Plaintiff is not seeking recovery of those particular benefits by this lawsuit, but is seeking damages due to the loss of those benefits.
Amended Complaint at ¶ 5.

**4.** This Court embraced an alternative "arising under" analysis with respect to a bad faith claim accompanying a workers' compensation claim in *Allsup v. Liberty Mut. Ins. Co.*, 782 F.Supp. 325, 327–28 (1991). *See also Bastian v. Travelers Ins. Co.*, 784 F.Supp. 1253, 1257–58 (N.D.Tex. 1992) (discussing *Allsup* ). That analysis does not apply to the single claim at issue here. *See infra* pp. 1274–1275.

In this case, Addison invokes article 8307c of the Texas Workers' Compensation Act as the basis for his claim. *See* Amended Complaint at ¶ 8. Article 8307c provides that, "(n)o person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim ... (or) instituted or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act...." Tex.Rev.Civ.Stat. Ann. art. 8307c, § 1 (West Supp.1992).

This language leaves no doubt that the cause of action for firing an employee in retaliation for that employee filing a workers' compensation claim is created specifically by article 8307c. The Fifth Circuit rejected arguments to the contrary in *Jones v. Roadway Express, Inc.*, concluding that, "were it not for the workers' compensation laws, article 8307c would not exist...." 931 F.2d at 1092. Based on this conclusion, with a single retaliatory discharge claim before it, the court held that, "for purposes of section 1445(c), (plaintiff's) civil action under article 8307c arises under the workers' compensation laws of Texas." *Id.*

Addison's retaliatory discharge claim arises under Texas's workers' compensation laws.

Therefore, section 1445(c) suggests that Addison's claim was improperly removed and, section 1447(c) of the same title advises that the claim be remanded.[5] *See* 28 U.S.C.A. § 1447(c) (West Supp.1992). Indeed, based on its analysis, the Fifth Circuit, in *Jones v. Roadway Express, Inc.*, determined that, "(o)ur holding requires that this case be remanded to state court." 931 F.2d at 1092.

## III. ERISA's Preemption Provision

With this in mind, the Court considers whether Addison's retaliatory discharge claim, as presented, is preempted by ERISA. ERISA contains an express preemption provision, which reads as follows:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.[6]

29 U.S.C.A. § 1144(a) (West 1985). The preemption provision is familiar territory for the federal courts and, as is oft noted, is "deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987) (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 [1981]).

"The key to (the preemption provision) is found in the words 'relate to.'" *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, ——, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990).[7] A cause of action " 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).

The Court concludes that the "relates to" analysis that governs this case is contained in *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290 (5th Cir.1989). There, B.F. Goodrich Co. sold all of its assets in the division in which Cefalu was employed. As a result,

---

**5.** Removal of a retaliatory discharge claim, even though prohibited by section 1445(c), has been justified when the claim is pendant to another removable federal question claim. *See Cedillo v. Valcar Enterprises*, 773 F.Supp. 932, 941 (N.D.Tex.1991). Because Addison's sole claim in this suit is the retaliatory discharge claim, such a rationale does not apply here.

**6.** In this case, although no specific reference to a qualifying ERISA plan has been made, both parties assume the plan's existence, devoting their entire arguments to whether Addison's claim is preempted. For the purposes of this motion, the Court will accept the parties' arguments as representations that a qualifying ERISA plan exists at Forex.

**7.** Based on a review of the pertinent legislative history, the Supreme Court added that, "Congress used (the 'relate to') words in their broad sense, rejecting more limited pre-emption language...." 111 S.Ct. at 482.

Goodrich offered Cefalu a choice from three new employment/retirement benefits packages. Cefalu chose and later sued Goodrich for breach of contract on the ground that Goodrich had misrepresented which retirement benefits were included in the option he had selected. Cefalu sought the retirement benefits he had expected as damages. *Id.* at 1291–92.

The Fifth Circuit held that Cefalu's claim was preempted by ERISA, reasoning that,

> (p)laintiff (Cefalu) concedes that if he is successful in this suit his damages would consist of the pension benefits he would have received.... To compute these damages, the Court must refer to the pension plan under which (Cefalu) was covered when he worked for Goodrich. Thus, the precise damages and benefits which (Cefalu) seeks are created by the Goodrich employee benefit plan. To use any other source as a measure of damages would force the Court to speculate on the amount of damages.

*Id.* at 1294. Other circuits have employed similar reasoning, *see, e.g., Straub v. Western Union Tel. Co.*, 851 F.2d 1262, 1265 (10th Cir.1988) (ruling that claim that pension benefits were misrepresented was preempted by ERISA); *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1470 (11th Cir.1986) (stating that a request for "compensatory damages in the form of loss of employee benefits.... demonstrates that the employees' fraud claim not only 'relates to' an employee benefit plan by is at its core an ERISA claim"), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987), and the Fifth Circuit recently confirmed the *Cefalu* rationale, highlighting that, "(t)his Circuit has held that the fact that a claim sought damages measured by pension benefits sufficed as the requisite 'connection'

to an employee benefit plan for preemption purposes." *Christopher v. Mobile Oil Corp.,* 950 F.2d 1209, 1218–20 (5th Cir. 1992) (citing *Cefalu,* 871 F.2d at 1294).

In this case, Addison's complaint openly seeks damages based on "greater pension rights, group insurance rights, as well as hospitalization, medical, and life insurance." *See* Complaint ¶ 5; *supra* note 3. Likewise, Addison's motion states that,

> in addition to other damages, he (Addison) has been damaged by losing certain fringe benefits, including disability and retirement benefits, as a result of Defendant's wrongful termination. But Plaintiff is not seeking recovery of those particular benefits by this lawsuit. What he is seeking is damages due to the loss of those benefits.[8]

Brief in Support of Motion for Remand, filed May 22, 1992, at ¶ 3 (emphasis omitted).

Addison's claim falls squarely under *Cefalu.* Pursuant to the Fifth Circuit's analysis therein, Addison's claim plainly relates to an ERISA plan; the Court cannot calculate the damages Addison seeks without reference to the applicable Forex employee benefits plan. Thus, the "relates to" language of the ERISA preemption provision suggests that Addison's claim for damages based on lost benefits is preempted.

This leaves the Court with an apparent conflict between section 1445(c), the workers' compensation non-removal provision, and the ERISA preemption provision.[9]

### IV. ERISA's Saving Clause

Further application of ERISA, however, reveals that the conflict is, indeed, more apparent than real. Among other limitations, *see* 29 U.S.C.A. § 1144(b) (West 1985

---

**8.** The subsequent paragraph reads as follows:
> That is, Plaintiff does not make a claim against any plan administrator for any benefits, but brings suit against Plaintiff's employer, under the Texas Worker's Compensation Act, for acting wrongfully in terminating his employment, which termination has damaged Plaintiff in numerous respects, including depriving him of certain of those benefits.

**9.** The Court's sister jurisdiction, the United States District Court for the Eastern District of

Texas, avoided a similar conflict in *Gibson v. Wyatt Cafeterias, Inc.,* 782 F.Supp. 331 (1992), when it concluded that the claim at issue was not preempted by ERISA and that the court, accordingly, could remand the case without reaching the section 1445(c) "arising under" question because the claim at issue was a state law claim in whatever form it took. *See id.* at 333 (relying on *Eurine v. Wyatt Cafeterias, Inc.,* 1991 WL at 207468, *1).

& Supp.1992), the ERISA preemption provision is subject to a "saving clause," which reads as follows: "Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137[b] of this title[10]) or any rule or regulation issued under any such law." 29 U.S.C.A. § 1144(d) (West 1985).

Some general guidance for application of the saving clause can be found in the Supreme Court's decision in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). There, noting the sparse legislative history behind the provision, the Court cautioned against applying the saving clause "too expansively." *Id.* at 104, 103 S.Ct. at 2903. The Court added that,

> (w)hile (the saving clause) may operate to exempt provisions of state laws upon which federal laws depend for their enforcement, the combination of Congress' enactment of an all-inclusive pre-emption provision and its enumeration of narrow, specific exceptions to that provision makes us reluctant to expand (the saving clause) into a more general saving clause.

463 U.S. at 104, 103 S.Ct. at 2903.

Elsewhere, while this Court has not uncovered any case applying the saving clause to section 1445(c), the saving clause cases on record fall into two categories, both of which provide useful insight.

First, the saving clause has been invoked when federal laws have been threatened with ERISA preemption. In such cases, courts have relied almost exclusively on the straightforward language of the clause. Indeed, based on that language, the Fifth Circuit declared, in *Goff v. Taylor (In re Goff)*, that ERISA "clearly was not intended to affect the operation of other federal law." 706 F.2d 574, 587 (5th Cir.1983). Asked to apply bankruptcy statutes, the court determined that, "ERISA's specific provision precluding interference with the

operation of federal law renders the Bankruptcy Code effective over any ERISA provisions to the contrary." *Id.* at 587.

Noting *In re Goff* and *Bonin v. American Airlines, Inc.*, 621 F.2d 635 (5th Cir. 1980), *see infra* note 12, this Court, Judge Eldon B. Mahon presiding, stressed that, "(t)he Fifth Circuit has consistently held that ERISA is subordinate to other federal statutes." *Calhoun v. Federal Deposit Ins. Corp.*, 653 F.Supp. 1288, 1292 (1987). In holding that a portion of the Federal Deposit Insurance Act, *see* 12 U.S.C.A. 1822(d) (West 1982), *amended by* 12 U.S.C.A. § 1822(d) (West 1989), was not preempted, the court cited the saving clause for the proposition that the acts of the Federal Deposit Insurance Corporation at issue were taken "under the authority of federal law, the operation of which ERISA cannot affect." 653 F.Supp. at 1294.

Other circuits have found the saving clause's language just as uncompromising. *See, e.g., Checkett v. Vickers*, 954 F.2d 1426, 1429 (8th Cir.1992) (stating that, "[t]here can be little question Congress determined that ERISA shall not impair or supersede any other federal statute"); *Hurn v. Retirement Fund Trust of Plumbing, Heating, and Piping Indus. of S. Cal.*, 703 F.2d 386, 391 (9th Cir.1983) (stating that, "ERISA was not to affect any federal laws not specifically mentioned [in its provisions]"). In *Hester v. International Union of Operating Eng'rs*, the Eleventh Circuit recited the saving clause and summarily concluded that, "as (plaintiff) seeks recovery for lost medical benefits under the (Labor–Management Reporting and Disclosure Act), 29 U.S.C. §§ 411(a)(5), 412, not state law, his claim is not preempted by ERISA." 941 F.2d 1574, 1583 (1991). The Ninth Circuit held that ERISA does not preempt core bankruptcy proceedings because "(section) 1144(d) expressly prohibits ERISA preemption of other federal laws." *John Hancock Mut. Life Ins. Co. v. Watson (In re Kincaid)*, 917 F.2d 1162, 1164 (1990). Similarly, the Sec-

---

**10.** Neither of these provisions apply in this case. *See* 29 U.S.C.A. §§ 1031, 1137(b) (West 1985 & Supp.1992).

ond Circuit, in *NYSA–ILA Vacation & Holiday Find v. Waterfront Comm'n,* expressed that, "ERISA section (1144[d]) ... specifically states that the provisions of ERISA do not preempt any federal statutes," and then began and ended its subsequent inquiry with the question of whether the claims at issue were federal or state. 732 F.2d 292, 296–98, *cert. denied,* 469 U.S. 852, 105 S.Ct. 175, 83 L.Ed.2d 109 (1984).

In this case, section 1445(c) is, of course, a federal statute, and, the saving clause's language need not be read expansively to understand that section 1445(c) would be significantly impaired, altered, and even superseded, were Addison's retaliatory discharge claim preempted by ERISA. Addison's claim is a core workers' compensation claim, and section 1445(c) unequivocally declares that its kind remain in state court.[11] In the Fifth Circuit's words, "(b)ecause Congress intended that all cases arising under a state's workers' compensation scheme remain in state court, we believe that we should read section 1445(c) broadly to further that purpose." *Jones v. Roadway Express, Inc.,* 931 F.2d at 1092.

The applicability of the saving clause to section 1445(c) is altered not in the least by the fact that section 1445(c) is jurisdictional rather than substantive. In so determining, the Court takes note of *New Orleans Pub. Serv., Inc. v. Majoue,* 802 F.2d 166 (5th Cir.1986). In that case, while not expressly deciding the ERISA preemption issue, the court cited the saving clause in explaining the dictates of another federal removal statute, Title 28's section 1447(d), which provides that certain remand orders are not reviewable on appeal or otherwise. *See* 28 U.S.C.A. § 1447(d) (West 1973). The court stressed that, "(t)he fact that Congress assigned exclusive jurisdiction to the federal courts over ERISA actions which seek injunctions and other equitable

relief ... does not serve to defeat the plain meaning and policy underlying § 1447(d)." 802 F.2d at 168 n. 6.

The Ninth Circuit confronted a case involving possible preemption of a jurisdictional statute in *Ashton v. Cory,* 780 F.2d 816 (1986). There, the court ruled that the saving clause prevented the ERISA preemption provision from reaching a California tax statute in the interest of preserving the following Tax Injunction Act provision: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C.A. § 1341 (West 1976); *see* 780 F.2d at 818–19.[12]

Given the foregoing, the plain meaning of, and policy underlying, section 1445(c) are sufficient to stave off preemption pursuant to ERISA's saving clause.

Still, the second line of saving clause cases is instructive. In that line, the saving clause has been employed to shield state laws from preemption. *Shaw,* on its facts, was one such case, and the discussion therein sheds further light on this case, despite the federal nature of section 1445(c).

In *Shaw,* the Supreme Court, while acknowledging the saving clause's plain "law of the United States" language, held that certain state laws that prohibited actions already made illegal by Title VII of the Civil Rights Act of 1964 were saved from preemption by the clause. The Court reasoned that the laws at issue were necessary to the purposes of Title VII because Title VII was enforced, in part, through them. *Id.* at 102–04.

The sparse remaining saving clause precedent within the Fifth Circuit is tied to

---

**11.** The traditional view of workers' compensation claims is that they lie in the province of state courts, and this weighs in favor of giving full force and effect to section 1445(c). *See Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 744, 105 S.Ct. 2380, 2391, 85 L.Ed.2d 728 (1985).

**12.** Also of interest is *Bonin v. American Airlines, Inc.,* 621 F.2d 635 (5th Cir.1980), *see supra* p.

1277, in which the court—although its reasoning was based on the general policies underlying ERISA—cited the saving clause in determining that ERISA did not preempt the Railway Labor Act's mandatory procedures for the resolution of disputes within its coverage. *See* 621 F.2d at 638.

this reasoning. To wit, in *Heitkamp v. Dyke (In re Dyke)*, 943 F.2d 1435 (1991), the court considered whether ERISA preempted section 42.0021 of the Texas Property Code, Tex.Prop.Code Ann. § 42.-0021(a) (West Supp.1992), which exempts certain retirement benefits from the claims of creditors. *See* 943 F.2d at 1446. The court concluded that, although section 42.-0021 related to an ERISA plan, the saving clause precluded preemption because preemption would have modified and impaired the enforcement scheme for exemption provisions within the United States Bankruptcy Code. *Id.* at 1450; *see NCNB Texas Nat'l Bank v. Volpe (In re Volpe)*, 943 F.2d 1451, 1452–53 (5th Cir.1991) (following *In re Dyke*); *see also Checkett v. Vickers*, 954 F.2d at 1429 (reaching the same result concerning Missouri exemption provision). *But see Pitrat v. Garlikov*, 947 F.2d 419, 429 (9th Cir.1991) (declaring, in saving clause analysis, that, "[t]he bankruptcy code would not be impaired if there were no state law exemptions at all for it to enforce"). Other circuits have ruled various state statutes preempted or not preempted via similar reasoning. *See, e.g., National Elevator Indus., Inc. v. Calhoon*, 957 F.2d 1555, 1561–62 (10th Cir. 1992) (deciding that ruling by Oklahoma Commissioner of Labor under state wage law was not saved from preemption because ruling was not necessary to enforcement of the National Apprenticeship Act, 29 U.S.C. § 50); *McCoy v. Massachusetts Inst. of Technology*, 950 F.2d 13, 20–21 (1st Cir.1991) (determining that Fed.R.Civ.P. 64 did not salvage Massachusetts mechanics lien statute from preemption), *cert. denied*, —— U.S. ——, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992); *Bucyrus-Erie Co. v. Department of Indus.*, 599 F.2d 205, 213 (7th Cir.1979) (holding that Wisconsin fair employment law, as part of federal antidiscrimination framework, was preserved by saving clause), *cert. denied*, 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980).

In this case, unlike *Shaw* or *In re Dyke*, the federal statute at issue, section 1445(c), is jurisdictional, and the state law at issue, article 8307c of the Workers' Compensation Act, serves no enforcement role. Nevertheless, just as Title VII and the Bankruptcy Code's exemption provisions required state laws to enforce their mandates, the integrity of state workers' compensation laws, including article 8307c, must be maintained for section 1445(c) to have meaning and effect. Allowing ERISA to encroach on core workers' compensation claims would shrink section 1445(c), stripping it of flesh with each act of removal. The very essence of section 1445(c) is keeping such workers' compensation claims in state court.[13] *See Jones v. Roadway Express, Inc.*, 931 F.2d at 1092; *supra* pp. 1278–1279.

Thus, in the present case, the analyses from both lines of saving clause cases point to the same ultimate fortifications—the plain language of, and policy behind, section 1445(c).

Based on the plain language and purpose of both the saving clause and section 1445(c), as well as court applications of the saving clause, the Court concludes that section 1445(c) would be significantly altered, modified, and impaired if ERISA were allowed to preempt a straightforward article 8307c claim.

Therefore, pursuant to the saving clause, ERISA's preemption provision does not apply to Addison's article 8307c retaliatory discharge claim. Addison's claim is not preempted by ERISA, and, pursuant to section 1445(c), Addison's claim was improperly removed, depriving this Court of jurisdiction.

## V. Conclusion

Because the Court has no jurisdiction, Addison's Motion for Remand is GRANTED. *See* 28 U.S.C.A. § 1447(c). Accord-

---

**13.** Although the enforcement of state laws is not a saving clause issue or part of the *Shaw* analysis, it is an added benefit of restricting the reach of ERISA's preemption provision that—in a form of reverse application of *Shaw* and its

progeny—section 1445(c), by setting jurisdictional limits, functions as an enforcement mechanism for state workers' compensation laws, including article 8307c of the Texas Workers' Compensation Act.

ingly, this case is remanded to the 68th Judicial District Court of Dallas County.

SO ORDERED.